FILED

NOV 12 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ________ DEPUTY CLERK

Jamie Osuna, BD0868
CSP-COR
P.O. Box 8800
Corcoran, CA 93212
Plaintiff in Pro Per

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JAMIE OSUNA,

Plaintiff,

v.

GUSTAVO HERNANDEZ,

Defendant.

No. 1:26-cv-01144-KES-EPG (PC)

**PLAINTIFF'S OPPOSITION TO DEFENDANT HERNANDEZ'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff alleges misuse of restricted custodial access to publicly disclose nonpublic treatment information without authorization or institutional purpose. During Plaintiff's court-ordered placement in an SVSP mental-health unit, Hernandez allegedly obtained that information through his assignment. His comment describes cell entry before recounting psychoactive medication for trial competence and continuous nursing and officer monitoring. ECF No. 1, ¶¶ 20, 25, 27, 51, 55–57.

The pleaded misuse supports state action; Plaintiff contends preexisting federal law gave particularized fair warning, including by obvious application. CDCR's duties reinforce—not replace—that showing. The Court should deny dismissal of the individual-capacity claim. Sections II–IV.

Defendant invoked removal to challenge prospective relief, then disclaimed reliance; Plaintiff maintains the video and comment remain publicly available despite that assertion. ECF No. 23 at 3:25–26, 6 n.1; ECF No. 25 at 2:13–16. The disclaimer does not establish removal; deletion alone does not moot otherwise viable completed-injury damages. Sections IV–V.

## I. THE PLEADING-STAGE STANDARD GOVERNS THE MERITS.

Section 1983 requires a federal-right deprivation by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Rule 12(b)(6) tests plausibility, accepting well-pleaded facts and reasonable favorable inferences, not unsupported conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Pro se civil-rights pleadings remain liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Qualified-immunity dismissal requires entitlement apparent from the complaint itself. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

Defendant's Reconsideration, ECF No. 25, was filed, mailed to Plaintiff, and granted by the Court all on the same date of October 27, 2026, before Plaintiff could oppose it; nonresponse was not consent. ECF Nos. 25–26; ECF No. 25-2 at 1. The order changed notice requirements, not the merits or mootness. ECF No. 26 at 1:19–28, 2:2–4.

If outside material beyond permissible judicial notice or incorporation determines the Rule 12(b)(6) merits, Plaintiff requests Rule 12(d)'s opportunity to respond, applicable Rand notice, and time for a declaration-based Rule 56(d) request. *Anderson v. Angelone*, 86 F.3d 932, 934–35 (9th Cir. 1996). Plaintiff requests leave to address any new reply ground or evidence the Court would rely upon. L.R. 230(m).

Defendant assumes authorship for this motion and tests the allegations "accepted as true," rather than asking the Court to resolve who wrote the comment. ECF No. 23 at 3:1–7, 6:20–26; ECF No. 25 at 2:9–12. The complaint identifies Hernandez through the comment, named profile, and grievance history. ECF No. 1, ¶¶ 23–26, 34–38 & Complaint Exs. A–B. The complaint describes a grievance rejection based on a purported 2021 chronology, not a stated finding that Hernandez was misidentified or authorized to publish the information; the pleaded account creation and video publication occurred in December 2022 and October 2024. ECF No. 1, ¶¶ 9, 34–38, 66. Defendant "does not contend that Osuna failed to exhaust." ECF No. 25 at 3:27–28. The grievance allegations address identity and chronology.

## II. THE ALLEGED MISUSE INVOLVES RESTRICTED CUSTODIAL ACCESS.

Plaintiff was confined under court order for competency restoration in an SVSP mental-health unit; paragraph 51 alleges access available only through Hernandez's official custodial

authority. ECF No. 1, ¶¶ 20, 51, 55–56. The comment invokes work at SVSP and an assignment to clean Plaintiff's cell, describes entry, and then presents the treatment account. Id. ¶ 25 & Complaint Ex. A. Together, these allegations support state-conferred access unavailable to an ordinary member of the public—not a chance workplace encounter. Plaintiff challenges misuse of that access to publish nonpublic information, not a job title or an assumed database search.

Defendant treats lack of permission to speak for CDCR as dispositive. ECF No. 23 at 6–7. *Lindke v. Freed*, 601 U.S. 187, 198–201 (2024), a case invoked by Defendant, requires actual authority to speak for the State and its purported exercise, while recognizing misuse of entrusted power. *Lindke* distinguishes the type of authority entrusted to an official from an unlawful exercise of that authority. Id. at 199–200. Here, the pleaded authority is the custodial assignment permitting entry into Plaintiff's mental-health cell and access to nonpublic treatment information; the alleged misuse is diverting that information to public exposure. ECF No. 1, ¶¶ 20, 25, 51, 55–57. Plaintiff relies on that pleaded connection under the access-misuse authorities, rather than treating lack of spokesperson authority as dispositive. Defendant's own authority, *Anderson v. Warner*, 451 F.3d 1063, 1068–69 (9th Cir. 2006), found state action where an off-duty jail commander invoked official status to facilitate a private assault. ECF No. 23 at 7:5–7.

*Anderson* relied on *McDade v. West*, 223 F.3d 1135, 1139–41 (9th Cir. 2000), addressing misuse of restricted official access. *Naffe v. Frey*, 789 F.3d 1030, 1036–38 (9th Cir. 2015), recognizes that unauthorized conduct connected to official responsibilities can be state action, while rejecting the connection pleaded there. *Bracken v. Okura*, 869 F.3d 771, 775–78 (9th Cir. 2017), cited at ECF No. 23 at 8 n.2, likewise separates state action from immunity eligibility: it found state action but denied immunity eligibility for private hotel security.

The rules distinguish purpose-limited access from public release. DOM §§ 13030.9, 13030.14 require safeguards against unauthorized disclosure and limit internal disclosure to official duties and the purpose for which information was obtained. Opposition Ex. A-2–A-4, printed pp. 33–35; Cal. Civ. Code § 1798.24(d). DOM § 47120.3(c)(4), (6) expressly reaches protected-information posting from personal devices. Opposition Ex. A-6, printed p. 297. Separation from employment does not itself authorize disclosure of protected agency information.

Cal. Civ. Code § 1798.53; *Hurley v. California Department of Parks and Recreation*, 20 Cal.App.5th 634, 648 (2018). Plaintiff requests any leave required under ECF No. 2, § II(J), to submit Exhibit A as official policy text. The social-media article was effective April 21, 2021, before the alleged 2025 publication. Opposition Exs. A-6–A-7; ECF No. 1, ¶ 28.

## III. QUALIFIED IMMUNITY DOES NOT REQUIRE DISMISSAL HERE.

Qualified immunity asks whether the alleged conduct violates a constitutional right and whether that right was clearly established when it occurred. The Court may address either inquiry first. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

### A. The complaint plausibly alleges an unjustified medical disclosure.

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269–70 (9th Cir. 1998), recognizes medical confidentiality; *Seaton v. Mayberg*, 610 F.3d 530, 534–35, 539 (9th Cir. 2010), permits access justified by legitimate institutional interests. Magistrate Judge Grosjean found the alleged public disclosure without a legitimate penological interest cognizable at screening; District Judge Sherriff adopted that recommendation after de novo review. ECF No. 10 at 7:18–23; ECF No. 18 at 2:2–4, 18–21. Those orders support the privacy theory at screening; Plaintiff addresses the present defenses below and in Section II. The alleged psychoactive medication, competency-restoration purpose, and 24-hour nursing and officer monitoring concern nonpublic treatment—not merely cell occupancy or general behavior. ECF No. 1, ¶¶ 4, 20, 25, 55–57. The complaint alleges no legitimate institutional objective for publication; Defendant advances none here. Id. ¶¶ 27, 29, 53; ECF No. 23 at 6–9.

Agency custody does not make these alleged treatment details publicly releasable. The CPRA exempts medical files whose disclosure would unwarrantedly invade privacy and records exempted or prohibited from disclosure by other law. Cal. Gov. Code §§ 7927.700, 7927.705. Those exemptions concern compelled disclosure; Title 15 separately restricts identifying health-information disclosure and distinguishes general condition descriptions from specific medical information. Cal. Code Regs., tit. 15, §§ 3261.2(b), (e)(9), 3999.215(a)–(d); see also DOM § 13010.11(a)(9), (d)–(e), Opposition Ex. A-1, printed p. 26. These rules support confidentiality.

The five privacy factors favor Plaintiff on the allegations: sensitive psychiatric information; stigma and continuing exposure; unrestricted publication without safeguards; no institutional need for public access; and no mandate, policy, or recognizable public interest favoring disclosure of the particular information. *A.C. by & through Park v. Cortez*, 34 F.4th 783, 787–89 (9th Cir. 2022); ECF No. 1, ¶¶ 25, 29, 50–57, 61. *A.C.'s* safeguarded litigation access differs from the public dissemination alleged here; Plaintiff invokes its balancing framework, not an immunity denial.

The deliberate disclosure and "less than human" characterization support an inference of intended humiliation without an institutional purpose. ECF No. 1, ¶¶ 25, 27, 29, 53, 55–57. Those circumstances support conscience-shocking misuse of protected information, not liability for insults alone. *County of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998). CDCR's confidentiality and dignity-and-respect duties reinforce that distinction. DOM §§ 33030.3.1, 33030.3.3; Opposition Ex. A-5, printed p. 224.

Paragraph 57 alleges actual exposure of private treatment information; paragraph 25 identifies the disclosures. Paragraphs 7–8 reserve accuracy without alleging complete fabrication or withdrawing those allegations. ECF No. 1, ¶¶ 7–8, 25, 55–57. Read together, the complaint alleges disclosure of nonpublic information without adopting every assertion. Fed. R. Civ. P. 8(e). Competency proceedings alone do not establish prior publicity of these details. This pleading motion does not require treatment records or declarations proving the allegations. ECF No. 25 at 4:20–23.

**B. Preexisting law gave fair warning, including through obvious application.**

Defendant calls *Norman-Bloodsaw* too general. ECF No. 23 at 8:15–24. The question is whether existing law placed the particular conduct's unlawfulness beyond debate by March 2025. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011). Precedents may establish that notice through their combined holdings. *Polanco v. Diaz*, 76 F.4th 918, 930 & n.8 (9th Cir. 2023). *Norman-Bloodsaw* and *Seaton* supply the medical-privacy principles; *McDade* addresses misuse of official access. Plaintiff contends their combined application gave every reasonable officer fair warning against gratuitous public disclosure of nonpublic psychiatric-treatment information through

misuse of assigned custodial access.

*Powell v. Schriver*, 175 F.3d 107, 111–12, 114 (2d Cir. 1999), distinguishes gratuitous prisoner medical disclosure from legitimate uses; *Seaton* cites that reasoning. 610 F.3d at 534–35 n.18. *Powell* granted privacy-claim immunity for 1991 conduct, but its reasoning predates this publication. Persuasively, *Anderson v. Blake*, 469 F.3d 910, 914–18 (10th Cir. 2006), affirmed denial of pleading-stage immunity for an officer's unjustified media disclosure of intimate material entrusted for law-enforcement use. It concerns disclosure and fair warning, not the state-action issue disputed here.

A factually identical decision is unnecessary when existing constitutional law applies with obvious clarity. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam). On the pleaded state-action theory, this was not an inadvertent disclosure during care, a security decision, or a safeguarded institutional exchange. It was deliberate public exposure for humiliation without institutional need. ECF No. 1, ¶¶ 25, 27, 29, 51, 53, 55–57. Plaintiff contends the privacy and access-misuse authorities apply with that clarity; the personal account does not itself justify disclosure.

CDCR's on- and off-duty ethics standard requires officially received confidential information to remain undisclosed unless necessary to duty. DOM § 33030.3.3. Express personal-device and health-information restrictions reinforce why custodial access did not authorize publication for ridicule. DOM § 47120.3(c)(4); Cal. Code Regs., tit. 15, § 3261.2(b), (e)(9); Opposition Ex. A-5–A-6, printed pp. 224, 297. These duties corroborate and support the federal fair-warning showing. See *Hope*, 536 U.S. at 743–44; cf. *Davis v. Scherer*, 468 U.S. 183, 194–96 (1984).

## IV. DAMAGES AND PROSPECTIVE RELIEF ARE DISTINCT.

Plaintiff seeks nominal, compensatory, and punitive damages from Hernandez individually for the completed disclosure, not official-capacity damages. ECF No. 1, ¶¶ 14, 57, 61, 72. Individual capacity identifies who is liable; it does not concede private conduct. An officer may be personally liable under § 1983 for misuse of official authority. *Hafer v. Melo*, 502 U.S. 21, 25–28 (1991). The official-capacity damages bar does not defeat that claim. *Will v.*

*Michigan Department of State Police*, 491 U.S. 58, 70–71 & n.10 (1989). Later deletion does not itself moot otherwise viable damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291–92 (2021). 42 U.S.C. § 1997e(e) does not bar otherwise available nominal or punitive damages for the constitutional violation rather than emotional injury. *Oliver v. Keller*, 289 F.3d 623, 629–30 (9th Cir. 2002).

Official-capacity relief requires an official able to implement it. *Ex parte Young*, 209 U.S. 123, 157 (1908); *Hartmann v. California Department of Corrections & Rehabilitation*, 707 F.3d 1114, 1127 (9th Cir. 2013). Plaintiff seeks reasonable removal steps, not a successor's use of Hernandez's login or removal of another person's video. ECF No. 1, Prayer ¶ 4(a). The prior photograph, housing-information, and dental-record takedowns support institutional mitigation channels and dissemination stance, not Hernandez's involvement or authority by themselves. Id. ¶¶ 43, 47, 49. Relief must address an ongoing federal violation, not enforce state policy alone. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984). Qualified immunity does not bar proper prospective relief. *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012). Any defect confined to this remedy should not dispose of individual damages. This request is limited to Hernandez and does not seek reconsideration of the dismissal of other defendants for lack of participation in or control over the posting. ECF No. 18 at 2:9–16, 20–22.

## V. THE REMOVAL DISPUTE CONCERNS PROSPECTIVE RELIEF.

Defendant's October 19 motion invoked removal to argue that removal relief appeared moot. ECF No. 23 at 3:25–26, 6 n.1. His October 27 motion expressly disclaimed reliance while seeking vacatur of the Rand requirement. ECF No. 25 at 2:9–16. The order changed notice requirements without deciding availability. ECF No. 26 at 1:19–28. Plaintiff requests exclusion of the disclaimed premise without an adverse availability finding.

Plaintiff maintains that the video and comment remain publicly available despite the removal assertion. Plaintiff requests any leave required under ECF No. 2, § II(J), to submit Exhibit B identifying the comment and associated profile.[1]

[1] Video: https://www.youtube.com/watch?v=kIfHmA6QpMc Comment: https://www.youtube.com/watch?v=kIfHmA6QpMc&lc=Ugy0eJy7Wj0bzBnY5f54AaABAg The video ID contains uppercase I; lc begins with lowercase l. "Top comments" may omit comments visible in "Newest

Defendant bears the mootness burden. *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). A printed URL does not establish disputed later webpage content through the attachment exceptions. ECF No. 25 at 4:1–7; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999–1003 (9th Cir. 2018); Fed. R. Evid. 201(b), (e).

If disputed removal becomes material to prospective relief, Plaintiff requests deferral of an adverse factual ruling and authorization under ECF No. 2, § V(A), for limited discovery, including a Rule 45 subpoena to Google LLC. Defendant should first identify the URL checked, date, displayed result, and existing nonprivileged support. The subpoena would seek existing non-content records of publication, visibility, removal, and restoration status and dates for the identified video and comment during the disputed period, with Fed. R. Evid. 902(11) or (13) certification where applicable. Plaintiff requests preservation of those records. Any authorized subpoena and use of resulting certified records would comply with Rules 26(b)(1), 45(a)(4), and 45(d), and Rule 902's applicable requirements for notice and inspection of the records and certification.

Plaintiff requests notice and a reasonable opportunity to obtain and address provider evidence before an adverse availability ruling. A factual jurisdictional inquiry may consider outside evidence without conversion, but may not resolve intertwined merits disputes through jurisdictional fact-finding. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039–40 (9th Cir. 2004). If outside material determines the Rule 12(b)(6) merits beyond the recognized pleading-stage exceptions, Plaintiff requests Section I's conversion safeguards.

## VI. CONCLUSION

Plaintiff requests denial of ECF No. 23 as to the individual-capacity Fourteenth Amendment claim and separate consideration of any limitation on prospective official-capacity relief. Electing to stand on a complaint whose Hernandez claim survived screening does not establish futility. ECF Nos. 8–10, 18. Defendant's futility argument overlooks that the exhibits establish the comment's words, not the full scope of Hernandez's assignment and access. ECF No. 23 at 9:11–17. Only if the Court identifies a curable pleading deficiency does Plaintiff

---

first." YouTube Help: https://support.google.com/youtube/answer/13209064.

alternatively request thirty days to amend, without conceding amendment is necessary. Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Any amendment would address the specific deficiency identified, including, to the extent supported by facts available to Plaintiff, Hernandez's employment status when the relevant acts occurred, the assignment and source of access, and the connection between that access and the disclosure. Plaintiff requests that any dismissal distinguish a curable lack of factual detail from a legal conclusion that amendment would be futile.

If the federal claim is dismissed, Plaintiff requests precise grounds and, to the extent legally available, express reservation of viable, unadjudicated California claims against Gustavo Hernandez personally, including under Civil Code § 1798.53. Federal qualified immunity does not extend to California tort claims; their elements, procedural requirements, and state-law immunities remain separate. *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009).

If dismissal adopts the private-conduct rationale advanced by the Attorney General, Plaintiff will present Defendant's submissions and any adopting ruling in state court against a clearly inconsistent later characterization, invoking judicial estoppel where judicial acceptance and unfair advantage warrant it. ECF No. 23 at 7:14–27; *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). No state claim is added by this opposition. This alternative request concedes neither the absence of state action nor the futility of amendment. Plaintiff expressly preserves, and intends to pursue in the proper court, any viable California remedies against Hernandez personally, subject to the applicable procedural requirements.

November 10, 2026

Jamie Osuna
Plaintiff in Pro Per

**EXHIBIT INDEX**

Opposition Exhibit A — CDCR Department Operations Manual, updated through January 1, 2024. The following labels identify the seven reproduced pages:

A-1 — §§ 13010.11–13010.12 — Public release and media authority; printed p. 26.

A-2 — § 13030.9 (begins) — Employee safeguards; printed p. 33.

A-3 — § 13030.9 (continued); § 13030.14 (begins) — Disclosure restrictions; printed p. 34.

A-4 — § 13030.14 (continued) — Authorized disclosure conditions; printed p. 35.

A-5 — §§ 33030.3.1–33030.3.3 — Conduct and confidentiality; printed p. 224.

A-6 — §§ 47120.1–47120.4 — Social-media policy, including § 47120.3(c)(4), (6); printed p. 297.

A-7 — §§ 47120.5–47120.9 — Enforcement, auditing, and revision history; printed p. 298.

Historical CDCR source URL (2024 edition; cited pages reproduced in Exhibit A):

https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2024/03/2024-DOM.pdf

Opposition Exhibit B — Comment posted under @jive.turkeyz and associated profile. The complete comment appears in ECF No. 1, ¶ 25 and Complaint Exhibit A (ECF p. 18).

# OPPOSITION EXHIBIT A-1 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 13010.11–13010.12; printed page 26 (1 of 7).



(d) When a media inquiry is received, the fact that the inquiry was made shall not be volunteered to another media representative. No information developed to answer a media person's inquiry shall be provided to another media person unless it is in response to a separate inquiry from them on the same subject. This does not apply to responses to California Public Records Act (CPRA) requests when the requestor asks for CPRA responses previously provided.

(e) Staff shall not comment on any active or pending lawsuit or other legal action. Responses to specific allegations of a lawsuit or legal action shall be directed to the Assistant Secretary, Communications and the Office of Legal Affairs. Staff shall not comment on proposed legislation. Requests for comment on proposed legislation shall be directed to the Assistant Secretary, Communications, and the Office of Legislation.

**13010.11 Authorized Release of Information**

(a) The only data that may be released to the media or to the public about an incarcerated person or parolee without a valid written authorization from the incarcerated person or parolee is limited to the following:

(1) Name.

(2) Age.

(3) Race and/or ethnicity.

(4) Birthplace.

(5) County of last legal residence.

(6) Commitment offense.

(7) Date of admission to CDCR and CDCR number.

(8) Facility assignments and a general description of behavior.

(9) Patient health condition given in short and general terms that do not communicate specific medical information about the individual, such as good, fair, serious, critical, treated and released, or undetermined.

(b) These are standard terms acceptable under Health Insurance Portability and Accountability Act (HIPAA) laws and the guidelines of the California Association of Hospitals and the American Hospital Association. The term "stable" should not be used as a condition.

These terms are defined as follows:

(1) Undetermined - Patient is awaiting physician assessment.

(2) Good - Vital signs are stable and within normal limits. Patient is conscious and comfortable. Indicators are excellent.

(3) Fair - Vital signs are stable and within normal limits. Patient is conscious, but may be uncomfortable. Indicators are favorable.

(4) Serious - Vital signs may be unstable and not within normal limits. Patient is acutely ill. Indicators are questionable.

(5) Critical - Patient may be unconscious. Indicators are unfavorable.

(6) Treated and Released – Received treatment but not admitted.

(7) Manner of death as natural, homicide, suicide, accidental or executed. A death will only be confirmed after next-of-kin notification has been made. CDCR does not determine or release a person's cause of death – coroners do. News and non-news media representatives should be referred to the coroner of the county where the deceased person passed away in order to obtain an official cause of death.

(8) Sentencing and release actions, including month and year of current parole eligibility date.

(c) Generally, it is appropriate to provide all data which is a matter of public record. However, the Criminal Identification and Investigations Report (rap sheet) shall not be used as a source. Under law, information on the rap sheet is not a public record and shall not be used to furnish information concerning an incarcerated person's or parolee's arrest history to any person other than a sworn member of a government law enforcement agency. Information about the state prison history of parolees or previously incarcerated people, who have been arrested or are under investigation by an outside law enforcement agency, will only be released with the authorization from the arresting or investigating agency.

(d) Except as provided by applicable federal and state law, no person shall disclose any protected health information that identifies an individual without a complete CDCR Form 146-HC, Health Information-Photography and Video Consent Supplement (Rev. 12/22). Federal law also protects the individually identifiable health information about a decedent for 50 years following the date of death of an individual.

(e) No person shall disclose specific information involving an incarcerated person's medical history, educational test scores, psychological test results, classification scores, or information provided on employment or educational applications. Information on a CDCR Form 115, Rules Violation Report, that has not been affirmed by administrative review should be general in scope and referenced as allegations, such as "xxxx has been charged with...." Disciplinary information should be general in scope and should be limited to the number of adjudicated RVRs, whether they were serious or administrative, and the finding (guilty, not guilty).

(f) Pursuant to DOM Section 86060.5, CDCR often receives requests from the news media for information about current and former incarcerated people and parolees. The CCR Title 15 Section 3261.2(c) specifies what can be shared with the media about an offender. An offender's authorization is not needed. When receiving a request from the news media for a photograph or commitment offense information of an offender, the first point of contact is OPEC. OPEC will make a reasonable effort to determine whether the offender is the subject of a law enforcement investigation or prosecution. If so, OPEC will advise that agency of the media's request and ask if sharing the offender's information and/or photograph at that time might hamper the investigation. If the law enforcement or criminal justice agency specifically requests that the information and/or photograph be temporarily withheld, OPEC will relay that decision to the news media, along with the contact information for the agency for any needed follow-up. Reporters have the option of submitting a request pursuant to the CPRA.

**13010.12 Authority to Contact Media**

(a) The authority granted to institutions and DAPO to release information regarding an institution incident or newsworthy event does not extend to non-designated employees unless specifically authorized by the warden, institution head, DAPO headquarters PIO or OPEC.

Employees of CDCR shall not generate or initiate news media contact on behalf of CDCR regarding incidents or newsworthy events without prior approval to do so. Employees who believe that a particular event is newsworthy shall first seek the guidance and permission of the PIO, who shall seek appropriate authorization and make notification to the Assistant Secretary, Communications, or their designee in OPEC. Community Resources Managers and contractors and volunteers who run programs or events inside institutions shall not invite news or non-news media representatives into prisons without the permission of the institution PIO and OPEC.

**13010.13 Breaking News**

(a) Through PIOs and with authorization from the Assistant Secretary, Communications, institutions, community reentry facilities, and parole offices are encouraged to release breaking news such as information about escapes and major incidents. The PIOs are authorized to release related photographs if available, subject to DOM, Sections 13010.16 – 13010.17.3.

(b) The institution, community reentry facility, or parole office shall initiate release of breaking news under the guidance of OPEC and within regulations, policies and communications objectives. It shall be done as soon as practical before or soon after the event. The release shall be made simultaneously to all reporters or media who cover the institution or parole office if possible. Each shall be provided the same information which can be provided verbally. When contacting the media by telephone, PIOs shall develop a well-supported oral or written statement or talking points. This ensures consistency and accuracy in releasing breaking news.

(c) Every effort shall be made to release constructive news concerning the institution, community reentry facility or parole office. Information concerning programs and activities including blood donations, rescues, graduations, art shows, charitable activities, fundraisers for non-profit organizations, and concerts are possible subjects.

**13010.14 Informing the Secretary**

(a) The Assistant Secretary, Communications, shall inform the Secretary of events likely to attract significant or prolonged news media attention. This includes statements, advisories, and releases given to news media, as well as instances in which reporters enter facilities or institutions to cover activities or randomly interview incarcerated people.

**13010.15 Routine Media Interviews**

(a) Media representatives may be permitted random face-to-face interviews with incarcerated people housed in facilities under the jurisdiction of CDCR. Such interviews shall be conducted as stipulated by the institution head, including restricting the time, place, and duration of interviews, and size of technical crews. Random interviews of individuals involved in a specific activity or program, or encountered while covering an institution activity or event, shall be limited to the time, areas, and segments of the facility population designated by the institution head. It is advisable to contact CDCR's Office of Victim and Survivor Rights and Services when incarcerated people have been interviewed by news and non-news media representatives for victim notification. No incarcerated person shall be interviewed against their will.

# OPPOSITION EXHIBIT A-2 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 13030.9 (begins); printed page 33 (2 of 7).



**Commercial Purpose**

Any purpose which has financial gain as a major objective. It does not include the gathering or dissemination of newsworthy facts by a publisher or broadcaster.

**Confidential Information**

Information, other than exempt personal information, that is withheld from disclosure as a public record under DOM 13040.14 (Also see **Exempt** in this section).

**Data Subject**

See **Individual** in this section.

**Department Employees**

Full-time and part-time civil service and exempt employees, student assistants, aides, contractual persons/entities, consultants, or anyone whose duties with CDCR require or permit the use of records or information about other individuals.

**Disclose**

To divulge, release, transfer, disseminate, or otherwise communicate all or any part of any record orally, in writing, or by electronic or any other means to any person other than the one about whom the information is kept.

**Examine a Record**

The physical audit of a record by a departmental reviewer prior to an inspection or disclosure to determine if the record contains exempt personal information.

**Exempt**

Personal information that may, by law, be withheld from the individual to whom it pertains. This was formally referred to as confidential information (Also see **Confidential Information** in this section).

**File**

See **Record** in this section.

**Government Entity**

Any branch of the federal government or of state or local government as defined in GC 6254(b).

**Individual**

Any natural person about whom CDCR maintains any personal information.

**Inspect a Record**

The act of physically reviewing a record by the person about whom the record is kept or their authorized representative.

**Person**

Any natural person, corporation, partnership, firm, association, or government entity.

**Personal Information**

Any information that is maintained by an agency which identifies or describes an individual, including, but not limited to, an individual's name, social security number, physical description, home address, home telephone number, education, financial situation, and medical or employment history, including statements made by, or attributed to, the individual.

**Record**

Any records system or grouping of information about an individual that is maintained by CDCR by reference to an identifying particular, such as an individual's name, photograph, finger or voice print, or a number or symbol assigned to the individual. This includes all records systems maintained by CDCR.

**Records System**

Any grouping of records which pertains to one or more individuals maintained by CDCR from which information is retrieved by an individual's name, photograph, finger or voice print, or a number or symbol assigned to an individual.

**13030.5 Responsibility: Office of Information Practices**

The Office of Information Practices (OIP) operates under the direction of the Executive Officer of the CalHR. Its functions include, but are not limited to, the following:

- Assist an individual in identifying and accessing records which may contain information about the individual.
- Develop administrative guidelines and assist state agencies in implementing the IPA's provisions.
- Investigate alleged violations of the IPA.
- Mediate disputes arising under the IPA.
- Report uncorrected violations of the IPA to the Governor, the Legislature, and the appropriate law enforcement agency.

**13030.6 Responsibility: Departmental IPA Coordinators**

CDCR's IPA Coordinator shall:

- Ensure that CDCR complies with the provisions of the IPA.
- Act as liaison with the OIP.
- Provide training to those persons designated as local IPA liaison personnel.
- Collect information on records systems from all CDCR units that keep personal information for submission of necessary reports to the OIP as required by law.
- Coordinate individual requests for personal information to the appropriate CDCR division, facility, or office.
- Monitor record keeping practices of offices where personal information is collected, maintained, and disclosed.

**CALPIA**

The CALPIA's IPA coordinator, located in the Personnel and Training Unit, shall:

- Ensure that CALPIA complies with the provisions of the IPA.
- Act as liaison with the OIP.
- Collect information on record systems from all CALPIA headquarters units and CALPIA facility factories that keep personal information for submission of necessary reports to the OIP as required by law.
- Coordinate individual requests for personal information to the appropriate staff.
- Monitor record keeping practices of office where personal information is collected, maintained, and disclosed.

**13030.7 Responsibility: Local IPA Liaison Personnel**

Local IPA liaison personnel shall be the personnel manager from each facility, a unit/section chief from each headquarters division, or a staff services analyst or above from each regional parole office. Their duties shall include:

- Ensure that their division, parole region, or facility complies with all provisions of the IPA.
- Act as liaison with the departmental IPA coordinator.
- Coordinate individual requests for personal information to the appropriate office within their division, parole region, or facility for response.
- Monitor record keeping practices of offices where personal information is collected, maintained, and disclosed to ensure compliance with CDCR practices.

**13030.8 Responsibility: CCRM**

CCRM shall review the fingerprint card responses from State DOJ for persons appointed to positions which allow access to inmate records or EDP terminals usable to access electronically stored inmate records.

**13030.9 Responsibility: All Employees**

Employees responsible for the creation, use, maintenance, amendment, dissemination, and/or destruction of records containing any personal information shall take all necessary precautions to ensure that proper administrative, technical, and physical safeguards are established and followed in order to protect the confidentiality of those records and to preclude disclosure of personal information to unauthorized persons.

**Shall**

All CDCR employees who collect, use, maintain, amend, disseminate, and/or destroy personal information shall:

- Make every reasonable effort to respond promptly to inquiries and requests by persons desiring to receive or review personal information.
- Assist persons who are seeking personal information to make their inquiry specific and descriptive enough to facilitate locating the records requested.
- Respond, in a courteous and business like manner, to inquiries from persons seeking to review, obtain copies of, amend, correct, or dispute personal information kept by CDCR.

**Shall Not**

CDCR employees who collect, use, maintain, amend, disseminate, and/or destroy personal information shall not:

- Require individuals to disclose personal information which is not necessary and relevant to the lawful state function for which the employee is responsible.

# OPPOSITION EXHIBIT A-3 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 13030.9 (continued); § 13030.14 (begins); printed page 34 (3 of 7).



- Improperly disclose personal information relating to any individual to any unauthorized person. The improper disclosure of personal information is cause for an adverse action, and it may subject the employee and CDCR to legal action (See DOM 13030.33 for further information).
- Seek or use personal information relating to others for any purpose other than the lawful purpose for which it is collected. The intentional violation of this requirement is cause for an adverse action, and it may subject the employee and CDCR to legal action (See DOM 13030.33 for further information).

**13030.10 Validity of Information**

Every employee who collects, maintains, or receives personal information shall make reasonable efforts to ensure that the information is accurate, timely, relevant, and complete.

**13030.11 Notification and Reporting Requirements**

Each local IPA liaison person shall complete and file with CDCR's IPA Coordinator a fully complete T-SPB Form 103, Personal Records System Report. The steps to be followed to allow an individual to access records, request amendments, or dispute information about themselves shall be included with each T-SPB Form 103.

CDCR's IPA Coordinator shall complete and file with the OIP a completed T-SPB Form 103.

CDCR's IPA coordinator shall attach to the report submitted to the OIP a copy of CDCR's procedures on "How to Inspect and Correct Your Records" that shall explain the procedures to be followed by an individual wishing to access, inspect, amend, or dispute personal information kept by CDCR.

**Initial Report**

After the initial report is filed with CDCR's IPA coordinator and the OIP, only changes in the records systems and/or procedures need to be reported. If no changes have been made in the records system or procedures since the last previous report, a statement that there has been no change is sufficient. For this purpose, CDC Form 1020, IPA Notices of Records System Titles, shall be used and submitted. The local IPA liaison person shall compile and submit their respective reports to CDCR's IPA coordinator by March 1 of each year. By March 31, CDCR's IPA coordinator shall compile and forward CDCR's report to the OIP.

CDCR's IPA coordinator may report new records systems or changes anytime during the year to OIP.

Once the annual report is filed with the OIP, CDCR's IPA coordinator shall forward copies of the report to the Assistant Secretary, Communications and External Affairs, headquarters, and to all offices and/or units reporting that they keep personal information.

**13030.12 Notice to Individuals**

When CDCR collects personal information from individuals, by any means, including the use of forms, a CDC Form 1023, IPA Privacy Statement, shall be given to these individuals.

**13030.12.1 Content of Notice**

The notice shall cover all of the following:

- The CDCR name.
- The title, business address, and telephone number of CDCR official who is responsible for the system of records and who shall, upon request, inform an individual regarding the location of his or her records and the categories of any persons who use the information in those records.
- The authority, whether granted by statute, regulation, or executive order, which authorizes the maintenance of the information.
- With respect to each item of information, whether submission of such information is mandatory or voluntary.
- The consequences, if any, of not providing all or any part of the requested information.
- The principal purpose or purposes within CDCR for which the information shall be used.
- Any known or reasonably foreseeable disclosure which may be made of the information.
- The individual's right to inspect records containing personal information which is maintained by CDCR.

**13030.12.2 Notice Methods**

This notice shall be given by one of the following methods:

- A notice printed directly on the form requesting information.
- A written policy provided to the person with the form requesting information.
- A CDC Form 1023, filled out and given to the source person.

This notice shall be given at each contact when personal information is requested. When contact is of a regularly recurring nature, an initial notice followed by a periodic notice at not more than one-year intervals shall satisfy this requirement.

**13030.12.3 Exceptions to Notice Requirements**

This notice requirement shall not apply to the following:

- Any enforcement document issued by an employee of a law enforcement agency in the performance of his or her duties wherein the violator is provided an exact copy of the document.
- Any accident reportable under the Vehicle Code (VC) when the parties of interest may obtain a copy of the report pursuant to VC 20012.
- CDCR requirements for an individual to provide his or her name, identifying number, photograph, address, or similar identifying information, if this information is used only for the purpose of identification and communication with the individual by CDCR, except that requirements for an individual's social security number shall conform with the provisions of the Federal Privacy Act of 1974 and subsequent amendments.

**13030.13 General Requirements for Information Collection**

To the greatest extent possible, personal information shall be collected directly from the subject of the inquiry rather than from another source. All information collected must be relevant and necessary to accomplish the lawful purpose for which it is collected.

Reasonable efforts shall be made to ensure that all information about an individual is timely, accurate, relevant, and complete.

**13030.13.1 Inaccurate Information**

The CDCR shall correct, update, withhold, or delete any portion of a record that CDCR knows, or has reason to believe, is inaccurate before transmitting or communicating the information to an agency outside of state government.

**13030.13.2 Record of Information Sources**

When information is collected from an origin other than the individual about whom it is collected, a record shall be made of the information source. The record of the source shall be made available to the individual when they inspect the record. The document to be used in recording the origin of personal information shall be CDC Form 1022, IPA Record of Sources. For exceptions see DOM 13030.13.3.

**13030.13.3 Exception to Disclosing a Source of Information**

When the personal information is contained in a document and the individual about whom the information is being collected is given a copy of that document, the origin of the document need not be listed on the IPA Record of Sources. The identity of a source need not be recorded when the source is in a non-supervisory relationship with the individual and the information is given with the promise of confidentiality during an investigation of:

- An applicant for public employment or a state license.
- A grievance or complaint.
- A suspected civil offense.

See DOM 13030.19 and 13030.20 for further information.

**13030.13.4 Using Inmates to Collect Personal Information**

Inmates in assignments where they will type, file, or otherwise handle any non-confidential information pertaining to another inmate shall comply with all State IPA requirements.

**13030.14 Conditions of Disclosure**

Records containing personal information may be disclosed or transferred only under the following conditions:

- To the individual to whom the information pertains, unless the information is exempt from access to the individual (See DOM 13030.19).
- To other persons with the prior written, voluntary, and timely consent of the individual to whom the record pertains, if the information is not exempt from access and the consent to disclose has been obtained within 30 days before the disclosure or within the time limit specified in the written consent. The CDC Form 1021, IPA Voluntary Consent to Release Personal Information, shall be used for this purpose.
- To the guardian or conservator of the individual, or a person representing the guardian or conservator, if it can be proven with reasonable certainty that such person is the authorized guardian or conservator of the individual, or their authorized representative.

# OPPOSITION EXHIBIT A-4 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 13030.14 (continued); printed page 35 (4 of 7).



- To an employee of CDCR, as long as the disclosure is necessary for the performance of the employee's official duties and the use to be made of the information is related to the purpose for which the information was obtained.
- To another State agency, when the disclosure is necessary for that agency to accomplish its constitutional or statutory mission and use of the information shall be compatible with a purpose for which the information was obtained.
- To any person where the disclosure is in accordance with the PRA (GC 6250, et seq.) and DOM 13040.
- To a governmental entity when required by State or federal law.
- To a person for statistical research or reporting purposes if adequate written assurance is obtained that the information shall only be disclosed in a form that will not identify any individual.
- To a person when compelling circumstances exist which affect the health or safety of an individual as determined by the agency maintaining the information, unless the disclosure conflicts with state or federal laws. Upon disclosure the individual to whom the information pertains shall be notified in writing through their last known address.
- To the California State Archives (CSA) as a record which has historical or other value which warrants its preservation by the State.
- To the Director of General Services, or their designee for evaluation to determine if the record may have further administrative, legal, or fiscal value.
- To any person pursuant to a search warrant [except that compliance with PC 832.7 shall be required for the record of a peace officer employee].
- To any person pursuant to the VC 1800, et seq.
- To any person for verification of eligibility and authorization for payment of government health care service claims pursuant to the W&I 1000, et seq.
- To a law enforcement agency when required for investigation of criminal activity unless such disclosure is otherwise prohibited by law. If the request is from a DA, the information shall be disclosed within ten days unless a court determines that the disclosure is not in the public interest or for good cause.
- C-Files (excluding medical, psychiatric, and confidential) are accessible to the DA or designee upon request, pursuant to GC 6263.
- Physical access by the DA or designee to medical and psychiatric files is prohibited, pursuant to PC 1543 through 1545 and W&I 5328.01, unless a court order from the court in the county where the files are located has been obtained or release authorization has been obtained from the inmate/parolee whose file is being sought.

The DA or designee is permitted to obtain copies of medical reports/records of the victim(s) and assailant(s) related to any in-custody incident(s)/ assault(s) committed by inmates and subject to possible DA prosecution.

- The DA or designee is authorized to review Confidential files in the presence of designated facility staff to determine whether there is sufficient available information to file criminal charges for in-custody misconduct, (i.e., staff assault/inmate assault).

Requests by the DA or designee for copies of Confidential documents necessary to prosecute in-custody crimes shall be forwarded to the Warden or designee for authorization to release. Confidential documents identified by the Warden or designee as endangering the safety and security of staff, inmates, or the facility and/or deemed too sensitive for release to the DA or designee will not be released without a proper court order.

All other requests by the DA or designee for access to Confidential files to assess information for possible prosecution of crimes occurring in the community will be reviewed by the Warden or designee on a case-by-case basis. The Warden or designee shall factor the need of the DA or designee to obtain relative information and the need to ensure the safety and security of staff, inmates, and the facility.

In the event the DA or designee discovers exculpatory information in the Confidential file during their initial review, or any subsequent review, the DA or designee shall immediately notify the Warden or designee of the discovery and the DA's duty to disclose the exculpatory information to the defense per PC. The DA or designee shall notify the Warden or designee prior to disclosure of such information to the defense in order for the Warden or designee to determine any possible safety concerns and take appropriate action.

Subpoenas for inmate and parole records shall be referred, in accordance with DOM 14010.6.3 to the appropriate Attorney General's (AG) Office identified in DOM 14010.13. Any questions regarding subpoenas or court orders for inmate/parolee records should also be directed to the local AG's office.

- To a person or government entity to the extent required to obtain information from that person or government entity, when necessary for an investigation of a failure to comply with a specific law which CDCR is responsible for enforcing.
- To the OIP with the written, voluntary, and timely consent of the individual when necessary for an investigation of a complaint regarding the IPA or for mediation of a dispute.
- To an adopted individual if the information is limited to the general background of the individual's natural parent and does not include or reveal the identity of the natural parent.
- To a child or grandchild of an adopted individual if the information is limited to medically necessary information pertaining to the adopted individual's natural parents and does not include or reveal the identity of the natural parents.
- To a committee or member of the Legislature with the written, voluntary, and timely consent of the individual.
- To the University of California or a nonprofit educational institution conducting scientific research when the request includes the following:
- The need for the information.
- Procedures protecting the confidentiality of the information.
- Assurance that the identity of the individual shall not be disclosed in an individually identifiable form.
- To an insurer if authorized by VC 10900, et seq.
- To any person when the court issues a subpoena duces tecum or other compulsory legal process for the following:

***Note***: Before disclosure, if notification is not prohibited by law, CDCR shall reasonably attempt to notify the individual to whom the information pertains.

- A peace officer employee's record. It may be necessary to consult with the OLA, IPOLT, prior to disclosing a peace officer employee's record because of the restrictions imposed by PC 832.7 (See DOM 14010.6.10.2 for further information).
- Other employee's records. Only the documents specifically named shall be disclosed (See DOM 14010.10.1 for further information).
- An inmate's/parolee's record. Only the C-File shall be provided unless the court specifies other records by title.

**13030.15 Accounting for Disclosures**

Each operational unit within CDCR, including headquarters, division offices/sections/ units, field offices, facilities, and parole regions, shall keep an accurate accounting of the date, nature, and purpose of each disclosure made under the following circumstances:

- To persons or government entities when required by them to perform their constitutional or statutory duties. The use must be compatible with a purpose for which the personal information was collected.
- To a governmental entity when required by State or federal law.
- Under compelling circumstances which affect the health or safety of an individual.
- Under a subpoena, court order, or other compulsory legal process.
- Under a search warrant.
- To a law enforcement or regulatory government entity when required for an investigation of unlawful activity or for licensing, certification, or regulatory purposes, unless otherwise prohibited by law.
- To a person or government entity to the extent necessary to obtain information from the person or entity as necessary for an investigation by the person or entity of a failure to comply with a specific state law which that person or entity is responsible for enforcing.

**Also Include**

The accounting shall also include the name, title, and business address of the person or government entity to which the disclosure was made. Routine disclosures pertaining to crimes, offenders, and suspected offenders to law enforcement or regulatory government entities of federal, State, and local government require an accurate accounting. However, if disclosure is made to a government entity when required by state of federal law, it shall be sufficient to record the date of disclosure, the law enforcement or regulatory government entity requesting disclosure, and the purpose of the disclosure (e.g., investigation, licensing, certification, or regulatory purposes).

A CDC Form 819, IPA Personal Information Disclosure Log, shall be used to record disclosures. It shall be retained in the individual's file for three years

# OPPOSITION EXHIBIT A-5 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 33030.3.1–33030.3.3; printed page 224 (5 of 7).



Revised subsection 33020.6.2: July 27, 2010
Revised subsection 33020.9.2: August 9, 2011
Revised Article: April 30, 2021.
Revised subsections 33020.1, 33020.6.1, 33020.6.2, and 33020.6.3 and section 33020.16: January 17, 2023.

## ARTICLE 22 — EMPLOYEE DISCIPLINE

*Effective January 2006*

**33030.1 Policy**

All disciplinary action shall be imposed in a fair, objective, and impartial manner, and the California Department of Corrections and Rehabilitation (Department) shall consistently apply accepted principles of due process and progressive discipline when corrective or adverse action is imposed.

**33030.2 Purpose**

To ensure effective and efficient departmental operations and employee adherence to reasonable and acceptable rules of conduct and performance.

**33030.3 Employee Performance Standards**

**33030.3.1 Code of Conduct**

As employees and appointees of the Department, we are expected to perform our duties, at all times, as follows:

- Demonstrate professionalism, honesty, and integrity;
- Accept responsibility for our actions and their consequences;
- Appreciate differences in people, their ideas, and opinions;
- Treat fellow employees, inmates, wards, parolees, victims, their families, and the public with dignity and respect;
- Respect the rights of others and treat them fairly regardless of race, color, national origin, ancestry, gender, religion, marital status, age, disability, medical condition, pregnancy, sexual orientation, veteran status, or political affiliation;
- Comply with all applicable laws and regulations;
- Report misconduct or any unethical or illegal activity and cooperate fully with any investigation.

**33030.3.2 General Qualifications**

All employees are subject to the requirements as specified in the California Code of Regulations (CCR), Title 2, Section 172, General Qualifications, which states, in pertinent part, the following:

> *All candidates for, appointees to, and employees in the state civil service shall possess the general qualifications of integrity, honesty, sobriety, dependability, industry, thoroughness, accuracy, good judgment, initiative, resourcefulness, courtesy, ability to work cooperatively with others, willingness and ability to assume the responsibilities and to conform to the conditions of work characteristic of the employment, and a state of health, consistent with the ability to perform the assigned duties of the class.*

**33030.3.3 Law Enforcement Code of Ethics**

Peace officers employed by the Department are held to a higher standard of conduct on and off duty, as specified in the Law Enforcement Code of Ethics and the peace officer oath. The Law Enforcement Code of Ethics is as follows:

> *As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all people to liberty, equality and justice.*
>
> *I will keep my public and private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or my Department. I will maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life. I will be exemplary in obeying the law and the regulations of my department.*
>
> *I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities, organizational associations or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.*
>
> *Confidential information received in my official capacity shall remain undisclosed unless disclosure is necessary in the performance of my duty. I will never engage in acts of corruption, bribery, insubordination or the obstruction of justice, nor will I condone such acts by other peace officers. I will immediately report acts of misconduct by staff of my department and cooperate with all legally authorized agencies and their representatives in the pursuit of justice.*
>
> *I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.*
>
> *I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am serving as a law enforcement officer. I will constantly strive to achieve these objectives and ideals, dedicating myself before all present to my chosen profession... law enforcement.*

**33030.4 Definitions**

**Adverse Action** - A documented action, which is punitive in nature and is intended to correct misconduct or poor performance or which terminates employment.

**Affected Employee** - An individual who is the subject of adverse action.

**Appointing Power** - The Secretary of the Department.

**Assistant General Counsel (AGC)** - An individual responsible for managing the Employment Advocacy and Prosecution Team (EAPT) in the Department's Office of Legal Affairs.

**Bureau of Independent Review (BIR)** – A unit within the Office of the Inspector General responsible for contemporaneous public oversight of the Department's investigative and disciplinary processes.

**Charging Package (Also known as the "*Skelly* package")** – All documentation used to substantiate the charges in the action and which is presented to the employee with the Preliminary or Final Notice of Adverse Action. This material may include but is not limited to the following: the investigative report; applicable policies; procedures, and Government Code sections; records of training the employee has attended; job descriptions; and duty statements and/or post orders that are related to the charges. This package does not include the CDCR Form 402, Hiring Authority Review of Investigation, and CDCR Form 403, Justification of Penalty.

**Chief Assistant Inspector General (CAIG)** – An individual responsible for the operation and functions of the BIR.

**Corrective Action** - A documented non-adverse action (verbal counseling, in-service training, on-the-job training, written counseling, or a letter of instruction) taken by a supervisor to assist an employee in improving his/her work performance, behavior, or conduct.

**Designated Cases** – Those cases assigned to the Vertical Advocates, including matters involving staff integrity and/or dishonesty, abuse of authority, sexual misconduct, use of force in which an inmate suffers death or serious injury, use of deadly force, serious allegations made against supervisors, and high profile or dismissal cases assigned to the Vertical Advocate by the AGC.

**Employee Counseling Record** - A written record of counseling, documented on a CDC Form 1123, between a supervisor and subordinate which provides formal instruction about laws, rules, policies and employer expectations.

**Employee Relations Officer (ERO)/Disciplinary Officer** – An employee designated by the Hiring Authority to coordinate adverse actions.

**Employment Advocacy and Prosecution Team (EAPT)** – The team, formerly known as the Employment Law Unit, responsible for operation of the Vertical Advocacy Model in the Department's Office of Legal Affairs.

**Executive Review** – A secondary, management-level review conducted to resolve a significant disagreement(s) regarding an investigative finding, proposed disciplinary penalty, or settlement agreement.

**Hiring Authority** – The Undersecretary or General Counsel or any Chief Deputy Secretary, Executive Officer, Chief Information Officer, Assistant Secretary, Director, Deputy Director, Associate Director, Warden, Superintendent, Health Care Manager, Regional Health Care Administrator, or Regional Parole Administrator authorized by the appointing power to hire, discipline, and dismiss staff under his/her signature authority. The Administrator at the Richard A. McGee Correctional Training Center shall serve as the Hiring Authority for Correctional Officer Cadets. The appointing power is a hiring Authority, for purposes of this Article.

**In-Service Training (IST)** – Formal training conducted departmentally and/or at the direction of the Hiring Authority and usually conducted away from the employee's work site.

**Letter of Instruction (LOI)** – A written document, which outlines requirements for an employee to advance his/her job performance or conduct to an acceptable level.

# OPPOSITION EXHIBIT A-6 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 47120.1–47120.4; printed page 297 (6 of 7).



**47110.20 References**

Government Code §§ 6250-6265.
California Code of Regulations, Title 15 § 3261.2.
California Labor Code § 92.
Civil Code, Information Practices Act § 1798.
California State Administrative Manual § 5320.5.
California Penal Code §§ 13100-13104.
California Civil Codes § 17.

**ARTICLE 39 — SOCIAL MEDIA POLICY**

*Effective April 21, 2021*

**47120.1 Purpose**

(a) The California Department of Corrections and Rehabilitation (CDCR), in collaboration with the California Correctional Health Care Services (CCHCS) and the California Prison Industry Authority (CALPIA) has developed this policy to provide standards and establish requirements for all CDCR, CCHCS, and CALPIA (hereinafter referred to as department) personnel when using social media.

(b) Only authorized department personnel shall represent the department on social media. Social media is a tool that may be used to convey information and facilitate communication to support the department's mission.

(c) This policy provides the parameters that all department personnel must follow in order to access or use social media.

(1) The only authorized use of social media falls within two fundamental categories.

(A) Obtaining information, consuming content, or performing research for tasks or assignments.

(B) Creating or managing content relevant to the department's mission.

**47120.2 Scope**

The scope of this policy extends to all department personnel as well as all information assets owned or operated by the department. Scope also extends to department personnel who use social media outside of the department network on non-department managed or owned devices where it may be perceived that such activities are on behalf of the department.

**47120.3 Policy**

The following are the policy requirements for the management and use of social media.

(a) Department Authorized Content Managers

(1) Content managers authorized to represent the department on social media are limited to the following:

(A) The Office of Public and Employee Communications (OPEC) for CDCR and CCHCS.

(B) CALPIA designee(s).

(2) Authorized content managers shall ensure that an auditable record of all postings and modifications to social media content are retained subject to department data retention policies.

(3) Accessing social media, including but not limited to, viewing and managing content through the department network requires approval through the established Workgroup Computing Policy. This policy and related forms can be found in Department Operations Manual (DOM) Chapter 4, Article 41.

(b) Department Acceptable Use

(1) Access to social media available through the department network is provided for official business.

(2) Posting of any content on behalf of the department must be approved by the OPEC or CALPIA designee.

(c) Department Unacceptable Use

As with other forms of communications, employees' use of social media should comply with CDCR's Code of Conduct as found in DOM Chapter 3, Article 22, Section 33030.3. Using social media in an unacceptable manner through CDCR assets may result in the loss of access to social media through the CDCR network, disciplinary action, or both. Unacceptable use of social media includes, but is not limited to, the following:

(1) Department personnel shall not post social media content on behalf of the department, unless specifically authorized by the OPEC or CALPIA designee.

(2) Department personnel shall not create social media accounts that mislead the public that content posted is on behalf of the department, including the use of department images or logos.

(3) Department personnel shall not use State-issued assets to post material that could discredit the reputation of the department or its agents.

(4) Department personnel shall not post or release personnel, contractor, offender, victim or their family's private, confidential, sensitive or other protected information under state or federal law, including, but not limited to, CDCR intellectual property on social media unless explicitly authorized by OPEC or CALPIA designee, whether or not the post of such information is from State-issued equipment or device or an individual's personal equipment or personal device.

(5) Department personnel shall not utilize tools or techniques to spoof, masquerade, or assume another current or former department identity including business units and individual personnel except for legitimate law enforcement purposes.

(6) Use of social media shall not be conducted in a manner that undermines the privacy, safety and security of personnel, contractors, offenders, victims, or families thereof.

**47120.4 Roles and Responsibilities**

(a) CDCR, CCHCS, and CALPIA CIOs, and OPEC designee:

(1) Are responsible for ensuring that all users of department information assets are aware of this policy and acknowledge their individual responsibilities.

(2) Is responsible for ensuring that this policy will be reviewed annually in order to make recommendations for policy changes or the introduction of new policy to the Information Security Officer (ISO) for the bi-annual review and update cycle.

(3) Shall ensure that authorized users with access to social media are trained regarding their roles and responsibilities.

(b) OPEC and CALPIA designee:

(1) Are responsible for identifying the department authorized users of social media.

(2) Are responsible for reviewing and approving all department social media content posted or shared on behalf of the department or its representatives.

(c) The Information Security Officer (ISO):

(1) Is responsible for the periodic auditing and assessment of compliance with this policy.

(2) Is responsible for the review and update of this policy every two years.

(d) Department Managers and Supervisors:

(1) Are responsible for obtaining approval from OPEC, CALPIA or designee, for any content posted or shared to official department social media.

(2) Are responsible for ensuring that personnel comply with this policy.

(e) All Department Personnel Speaking on Behalf of the Department:

(1) Shall provide content developed for social media to OPEC designated reviewers for approval and publication.

(2) Shall connect to, and exchange information with, only authorized social media web sites in accordance with the requirements of this policy and other department and State information security policies.

(3) Are required to abide by this policy and applicable department information security and privacy policies.

(4) Who are authorized to speak on behalf of the department or the State shall identify themselves by: a) Full Name; b) Title; c) Department; and d) Department Contact Information, when posting or exchanging information on social media forums, and shall address issues only within the scope of their specific authorization.

(f) Department Information Technology Administrators shall:

(1) Limit Internet access to social media websites according to the department's acceptable use policy, while allowing authorized users to access content necessary to conduct department business. Limitations may include, but are not limited to:

(A) Only allowing social media access to users who are specifically authorized (see Department Authorized Users) through the use of the Department Workgroup Computing Policy regarding internet access.

(B) Disabling unnecessary functionality within social media web sites, such as Instant Messaging (IM) or file exchange.

(C) Minimize or eliminate the addition of web links within posts to other web sites, to minimize the risk of exposing a user to a link that leads to inappropriate, unauthorized, or potentially malicious content.

(2) Enable security controls to mitigate risk to the extent possible. These controls may include, but are not limited to:

(A) Monitoring and auditing of all social media web site content posted, viewed or both.

(B) Inspecting all files transmitted to or from social media web sites.

# OPPOSITION EXHIBIT A-7 — 2024 CDCR OPERATIONS MANUAL

DOM §§ 47120.5–47120.9; revision history; printed page 298 (7 of 7).



(C) Securing social media platform and website account credentials (user names and passwords) from unauthorized access.

(D) Utilize Multi-Factor Authentication (MFA) as required where supported by the social media account.

**47120.5 Enforcement**

(a) Non-compliance with this policy may result in disciplinary or adverse action as set forth in DOM Chapter 3, Article 22, Section 33030.15.5.

(b) The department shall comply with the information security and privacy policies, standards and procedures issued by the California Department of Technology, Office of Information Security (OIS). In addition to compliance with the information security and privacy policies, standards, procedures, and filing requirements issued by the OIS, the department shall ensure compliance with all security and privacy laws, regulations, rules, and standards specific to and governing the administration of their programs. Program administrators shall work with their general counsel, ISO, and Privacy Program Officer or Coordinator to identify all security and privacy requirements applicable to their programs and ensure implementation of the requisite controls.

(c) Department personnel should understand that the consequences of negligence and non-compliance with State laws and policies may include department and personal:

(1) Loss of delegated authorities.

(2) Negative audit findings.

(3) Monetary penalties.

(4) Legal actions.

**47120.6 Auditing**

(a) The department has the right to inspect any activities related to the use of social media on State information assets.

(b) The department has the right to inspect any publicly available information posted or shared on social media and other forums at its sole discretion.

**47120.7 Authority**

This policy complies with the State of California Government Code Section 11549.3.

**47120.8 Definitions of Key Terms**

The department uses the information security and privacy definitions issued by the California Department of Technology OIS in implementing information security and privacy policy. Terms and definitions are defined here and are on the California Department of Technology website at https://cdt.ca.gov/security/technical-definitions/.

(a) **Instant Messaging (IM):** An application that allows real-time electronic messaging or chatting.

(b) **Internet:** A global computer network providing a variety of information and communication facilities.

(c) **NIST:** National Institute of Standards and Technology – https://www.nist.gov/

(d) **Personally Identifiable Information (PII):** Information that can be used by itself or used in combination with other personal identifiable information to distinguish or trace an individual's identity.

(e) **Social Media Platform:** Interactive computer-mediated technologies that facilitate the creation and sharing of information, ideas, career interests and other forms of expression via virtual communities and networks.

(f) **Social Media:** Sites that enable the connection with others to form an online community. IM, file sharing and Web logs (blogs) are common features of Social Media. These sites may contain offensive material in the community-created content. This category may be used in conjunction with another category for more narrowly-focused social media, such as professional networking sites or social networking sections of personals or dating sites.

**47120.9 Revisions**

The Agency CIO, OPEC or CALPIA designee shall ensure that the contents of this article are current and accurate.

**References**

DOM Chapter 4, Articles 38, 41, 45

DOM Chapter 3, Article 22

California Government Code Section 11549.3

SAM, Section 4989.3, Agency/State Entity Roles and Responsibilities

SAM, Section 5305.3, Information Security Roles and Responsibilities

SAM, Section 5310.7, Security Safeguards

SAM, Section 5320.4, Personnel Security

SAM, Section 5360, Identity and Access Management

SIMM Section 66-B, Social Media Standard

**Revision History**

Effective April 21, 2021

## ARTICLE 40 — DISTRIBUTED DATA PROCESSING SYSTEM

*Revised April 10, 1993*

**47130.1 Policy**

It is the policy of the Department that the DDPS be used by facilities to efficiently maintain specified inmate information. This on-line, integrated information system has been established at the facilities to allow information sharing among multiple users within each facility.

**47130.2 Purpose**

The purpose of this policy is to describe DDPS and provide requirements for its use, thereby assisting facility staff to maintain a more efficient and secure environment in facilities.

**47130.3 Responsibility Within DDPS**

Wardens have direct responsibility for the use of DDPS at facilities, and responsibility is delegated to staff who use DDPS applications. Such responsibility includes ensuring the security of the system, and the integrity and accuracy of its data.

Users input information into the DDPS and, in return, are able to access the pooled information data base of the system. Since multiple users access the data base, there is an increased importance for entered information to be timely and accurate since it is relied upon by users throughout the Department.

The facility AISA is responsible for on-site support of DDPS users. This includes user log-on, security, trouble-shooting, producing ad hoc reports using INFORM, personal computer download activities, and headquarters liaison activities. The AISA provides assistance and training to users of the system. Additional training and assistance may be arranged through ISD.

DDPS issues that cannot be resolved at the facility or through ISD should be directed to the Deputy Director, ID.

QA and QC are ongoing concerns. ISD has established controls to ensure the accuracy of technical aspects of DDPS. Periodic monitoring and audits have been established to ensure that QC requirements are met, and assistance is provided to eliminate deficiencies within specified time frames.

**47130.4 System Overview of DDPS**

DDPS is a system comprised of one or more minicomputers operating in each facility and connected to minicomputers in headquarters by a wide area communications network. Four major applications reside currently on the DDPS. In addition to the requirements of this section, use of each application shall meet general operating specifications regarding policy, purpose, responsibility, QA, and QC.

The four DDPS applications are:

**Inmate Roster System**

The Inmate Roster System is the basis for DDPS and is, therefore, critical for the maintenance of all other DDPS applications. The roster is designed for use by control room staff and provides an automated means for tracking inmate location. This application allows any authorized user to request reports or make inquiries regarding any inmate or housing unit in the facility.

**Inmate Roster Record**

An Inmate Roster Record is created the first time an inmate is admitted. At that time, control room staff enter the inmate's full name, date of birth, ethnicity, arrival date, and location from which the inmate arrived. Once the inmate is admitted, the user must enter only the inmate's CDC number and the first five characters of the last name to enter a movement transaction. Reports on inmate movement may be generated within this application. The Automated Daily Movement Sheet is designed to assist control room staff in their use of the CDC Form 117, Daily Movement Sheet.

In addition to the inmate roster, this application maintains a roster of the housing structure and beds at each facility. Control room staff may use this information to readily identify vacant beds, the identity of the inmate in each bed, and beds that are being held for inmates on temporary leave from the facility (e.g., out to court for the day, in a local hospital). Bed vacancy and empty bed reports may be produced in this application to assist control room staff with the running count process.

Although the inmate roster was designed to serve the needs of control room staff, it has proven to be highly beneficial to other functional areas of the facility.

# OPPOSITION EXHIBIT B — YOUTUBE PAGE AND COMMENT

@jivo.turkoyz 1 year ago

I met him while working at SVSP. I was assigned to clean his his cell and upon entrance i noticed it was unlike any of the other rooms I had previously cleaned. He a pentagram on the wall along with demons, on his bed he had an entire library of books and esyclapedias. I was only left with more questions than answers.Aomther thing that stood out to me was the amount of women who would communicate and send pictures to him in joker face paint. His demeanor seemed like nothing more than your average joe and if he didn't have a face full of tattoos you would never assume he was a cold blooded killer. That being said Jaime is being kept under 24 hour surveillance by nurses and officers, and being given psychoactive meds in order to insure that he will be fit to stand trial. We should have faith that the state will do what is right. But only God will decide the final fate of this less than human.

Show less

16 Reply

@jivo.turkoyz 1 year ago

We fight not against flesh and blood.

5 Reply

@jive.turkeyz

Search or ask a question



**Gustavo Hernandez**

@jive.turkeyz

More about this channel ...more

Subscribe

Source and reference note:

https://www.youtube.com/watch?v=kIfHmA6QpMc&lc=Ugy0eJy7Wj0bzBnY5f54AaABAg

Identifies the disputed comment, and profile. See Section V, footnote 1, for the URL and comment-display note.

**PROOF OF SERVICE**

Plaintiff proceeds pro se and submits his Opposition to Defendant Hernandez's Motion to Dismiss (ECF No. 23), including Exhibits A and B, in paper form under L.R. 133(a), (b)(2). Upon the Clerk's filing and transmission through CM/ECF, the Notice of Electronic Filing effects service on all registered counsel for Defendant Gustavo Hernandez, including Deputy Attorney General Rebecca Brandel. Fed. R. Civ. P. 5(b)(2)(E); L.R. 135(a), (f), (g)(1). No separate certificate is required for that electronic service. Fed. R. Civ. P. 5(d)(1)(B).

November 10, 2026

Jamie Osuna
Plaintiff in Pro Per