ROB BONTA, State Bar No. 202668
Attorney General of California
SHARON A. GARSKE, State Bar No. 215167
Supervising Deputy Attorney General
REBECCA BRANDEL, State Bar No. 334123
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3557
Fax: (415) 703-5843
E-mail: Rebecca.Brandel@doj.ca.gov
*Attorneys for Defendant*
*G. Hernandez*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **JAMIE OSUNA,**<br>Plaintiff,<br>**v.**<br>**GUSTAVO HERNANDEZ, et al.,**<br>Defendants. | 1:26-cv-01144-KES-EPG<br>**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br>Judge: Hon. Kirk E. Sherriff<br>Trial Date: Not Set<br>Action Filed: 2/09/2026 |

## INTRODUCTION

Osuna's opposition confirms that the complaint should be dismissed with prejudice. He concedes that he seeks damages from Officer Hernandez only in his individual capacity, and he identifies nothing that Officer Hernandez could do by virtue of his office to remove a comment from a YouTube account. The official capacity claim should therefore be dismissed. On the remaining claim, Osuna does not contend that Officer Hernandez had authority to speak for the State. Osuna argues instead that the comment was state action because its author learned what he wrote about through a work assignment. *Lindke v. Freed* forecloses that theory. A public employee who speaks about information learned on the job, without authority to speak for the

State, speaks as a private citizen. While Osuna relies on Ninth Circuit authority, the United States Supreme Court decision in *Lindke* establishes the controlling test. Moreover, the CDCR policies Osuna improperly relies on confirm that only designated staff may speak for the department.

In the alternative, Officer Hernandez is entitled to qualified immunity. Osuna cites no decision holding that a comment like this one violates the Fourteenth Amendment. The decisions he relies on granted qualified immunity, found no violation, or did not decide the privacy question. Amendment would be futile. The motion to dismiss should therefore be granted, and the case dismissed with prejudice.

## ARGUMENT

### I. THE OFFICIAL CAPACITY CLAIM SHOULD BE DISMISSED WITH PREJUDICE BECAUSE OSUNA CONCEDES HE SEEKS DAMAGES ONLY IN OFFICER HERNANDEZ'S INDIVIDUAL CAPACITY.

Osuna concedes that he "seeks nominal, compensatory, and punitive damages from Hernandez individually for the completed disclosure, not official capacity damages." (Dkt. No. 28 at 6:24–25.) The official capacity damages claim should be dismissed with prejudice on that basis. (Dkt. No. 23 at 5:7–20.) Even if Osuna had not so conceded, the claim would fail. A suit against a state official in his official capacity "is no different from a suit against the State itself," so such officials are not "persons" subject to suit for damages under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment independently bars official capacity claims for damages against state officials. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Regarding his request for injunctive relief, Osuna also agrees that "[o]fficial-capacity relief requires an official able to implement it," and he renounces any relief that would require "a successor's use of Officer Hernandez's login." (Dkt. No. 28 at 7:6–9.) He identifies no step that a correctional officer could take, by virtue of that office, to remove a comment posted from a personal account, and the "institutional mitigation channels" he mentions belong to CDCR officials who are no longer parties. (*Id.* at 7:9–17.) What remains is a request that Officer Hernandez personally delete a personal post, which is not relief available from an official "by virtue of his office." *Ex parte Young*, 209 U.S. 123, 157 (1908). (*See* Dkt. No. 23 at 5:21–6:10.)

And because Osuna agrees that prospective relief "must address an ongoing federal violation," the request fails with the underlying claim, which alleges no state action. (Dkt. No. 28 at 7:12; *see* Dkt. No. 23 at 6–7.)

The link in the complaint's exhibit shows the video is unavailable and that the removal request therefore moot. (Dkt. No. 23 at 3:24–26, 6 n.1.) The video still does not work at the link Osuna provides in his opposition. (Dkt. No. 28 at 7 n.1.) The motion to dismiss does not depend on whether the video or comment remains online, and Defendant asks for no finding on that point. (*See* Dkt. No. 25 at 2:13–16.) Osuna's requests for discovery, a subpoena to Google, preservation, and Rule 12(d) procedures are therefore unnecessary at this stage of the litigation. (Dkt. No. 28 at 2:12–16, 8:5–20.)

Osuna concedes that he seeks only individual capacity damages, Section 1983 and the Eleventh Amendment bar official capacity damages, and the requested injunctive relief is unavailable. The official capacity claim should therefore be dismissed with prejudice.

## II. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THE COMPLAINT FAILS TO ALLEGE ACTION UNDER COLOR OF STATE LAW.

### A. *Lindke* Requires Authority to Speak for the State, and Osuna Alleges None.

A public employee's social media activity is state action "only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke v. Freed*, 601 U.S. 187, 198 (2024); *accord Garnier v. O'Connor-Ratcliff*, 136 F.4th 1181, 1187–88 (9th Cir. 2025). Osuna does not contend that Officer Hernandez had that authority. (*See generally* Dkt. No. 28.) He asks the Court not to treat "lack of spokesperson authority as dispositive." (*Id.* at 3:13–14.) But *Lindke* makes it dispositive. The authority "must extend to speech of the sort that caused the alleged rights deprivation," and "[i]f the plaintiff cannot make this threshold showing of authority, he cannot establish state action." *Lindke*, 601 U.S. at 201.

Osuna argues that the relevant authority is "the custodial assignment permitting entry into" his cell. (Dkt. No. 28 at 3:10–11.) That is authority to be in a cell, not the authority Osuna says was used to injure him—commenting the allegedly confidential information. (Dkt. No. 1, ¶ 7.)

The state-action doctrine "requires that the State have granted an official the type of authority that he used to violate rights," and that authority must be tied to "the gravamen of the plaintiff's complaint." *Lindke* at 199-200. The gravamen here is publication. Osuna "challenges only the unauthorized disclosure and continued public dissemination" of the information (Dkt. No. 1 at ¶ 7), and he confirms that he challenges the use of access "to publish nonpublic information, not a job title or an assumed database search." (Dkt. No. 28 at 3:4–5.) An assignment to clean a cell carries no power to publish anything on the State's behalf. "To misuse power, however, one must possess it in the first place." *Lindke*, 601 U.S. at 200. *Lindke* also answers Osuna's point that the author learned the information at work. Public employees speak in their private capacities about "information related to or learned through public employment," and such speech is state action only when the employee purports to exercise state authority. *Id.* at 197, 203 (citation omitted). What matters is the capacity in which the employee speaks, not the source of what he says. *See id.* at 201–02 (school board president who repeats at a backyard barbecue what he announced at a board meeting engages in "private action taken in his personal capacity").

The comment here was posted from a personal account, beneath a third party's video, and claimed no authority over anyone. (Dkt. No. 23 at 7:12–21.) Osuna's only response is that the comment mentions its author's work at Salinas Valley State Prison. (Dkt. No. 28 at 3:1–2.) But describing a past assignment is not purporting to speak for the State. Rather, it is what any employee does when he speaks "in his own voice" about his job. *Lindke*, 601 U.S. at 201. Even an official who "presents herself as possessing authority to speak on behalf of the state" engages in no state action without actual authority. *Garnier*, 136 F.4th at 1188. Therefore, nothing in the opposition changes that Osuna failed to plead the necessary state action, and his claim should be dismissed with prejudice.

### B. The Ninth Circuit Decisions Osuna Relies on Do Not Change the Analysis under *Lindke*, and his Claim Still Fails as a Matter of Law.

*Lindke*, not the earlier Ninth Circuit decisions Osuna cites, supplies the operative standard. The Ninth Circuit has recognized that *Lindke* "announced a new test for determining whether a public official's social media activity constitutes action under color of state law," abrogating the

"nexus test" of *Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015). *Garnier*, 136 F.4th at 1187–88. The decisions cited do not support Osuna's case.

Osuna's reliance on *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) does not support his claim because the conduct there was different. In *McDade*, the employee searched a restricted government database "during normal working hours, using computer equipment and a password supplied by the County," and so "acted under the pretense of state employment by asserting her state-authorized passcode." *Id.* at 1140–41. The unlawful search was itself an exercise of a state-issued credential. *See id.* Here, the only conduct Osuna alleges occurred while Officer Hernandez was working was Officer Hernandez's entry into the cell he was assigned to clean, which Osuna does not challenge. (Dkt. No. 1, ¶¶ 7, 25; Dkt. No. 28 at 3:4–5.) The act Osuna challenges is a comment posted in March 2025 from a personal account created in October 2024. (Dkt. No. 1, ¶¶ 28, 36.) Posting it required no state credential, state equipment, or official status. The Ninth Circuit has since made clear that *McDade* does not reach private speech that draws on what an employee learned at work.

*Naffe* does not support Osuna's case. In *Naffe*, a deputy district attorney used a personal blog and Twitter account to attack the plaintiff. *Naffe*, 789 F.3d at 1033–34. The court held that the attorney did not act under color of state law because "a government employee does not act under color of state law when he pursues private goals via private actions," and although he "drew on his experiences as a Deputy District Attorney to inform his blog posts and Tweets, that alone does not transform his private speech into public action." *Id.* at 1037–38. The court relied on *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996), which found no state action "even though Stanewich drew on knowledge he gained as a police officer to identify his victims." *Id.* at 1038. Osuna acknowledges that *Naffe* rejected the connection pleaded there (Dkt. No. 28 at 3:18–20), but he does not explain why the connection here is stronger. Regardless, *Lindke* abrogated these decisions. *Garnier*, 136 F.4th at 1187–88.

*Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006), does not help Osuna either. The off-duty officer there told bystanders he was a "cop" and ordered them to stay back during an assault. *Id.* at 1069. State action required that his "pretense of acting in the performance of his duties

must have had the purpose and effect of influencing the behavior of others." *Id.* The comment's statement that its author worked at Salinas Valley State Prison was not a pretense of performing any duty, and it is not alleged to have influenced anyone's conduct. (Dkt. No. 1, ¶ 25.) An employee does not act under color of state law merely because he is recognized as a public employee. *See Van Ort*, 92 F.3d at 839. Therefore, the case law Osuna cites does not save his claim and does not change that this claim should be dismissed with prejudice for lack of the requisite state action under the controlling standard from *Lindke*.

### C. The Opposition's Exhibits Are Outside the Pleadings and, in Any Event, They Confirm that Officer Hernandez had no Authority to Speak for the State.

Osuna attaches excerpts of CDCR's Department Operations Manual (DOM) to his opposition. (Dkt. No. 28 at 10–17.) They are not part of the complaint, and on a Rule 12(b)(6) motion a court may not "look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).[1] Even if considered, the excerpts do not help Osuna.

Authority to speak for the State must be "rooted in written law or longstanding custom." *Lindke*, 601 U.S. at 201. In *Garnier*, it came from bylaws designating the board president to speak to the public. *Garnier*, 136 F.4th at 1188–89. The written policies Osuna cites point the other way. The social media policy quoted in the complaint prohibits personnel from posting protected offender information "unless explicitly authorized by appropriate departmental authority," even from "an individual's personal device." (Dkt. No. 1, ¶ 33.) The excerpts attached to the opposition add that "[o]nly authorized department personnel shall represent the department on social media," that authorized content managers are limited to the Office of Public and Employee Communications and a CALPIA designee, and that authority to release

[1] At most, the Court may take judicial notice that these provisions exist and of what they say, not of Osuna's factual assertions about them. *See* Fed. R. Evid. 201(b); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (a court "cannot take judicial notice of disputed facts contained in such public records").

information "does not extend to non-designated employees." (Dkt. No. 28 at 11, 16 (DOM §§ 13010.12(a), 47120.1(b), 47120.3(a)(1)).)

Osuna cites these rules to show that the comment misused access granted for a limited purpose. (Dkt. No. 28 at 3:23–27.) They show something different. A rule that forbids employees from posting on their personal devices regulates private conduct. It does not make that conduct the State's. If it did, every breach of an employee conduct rule would be action under color of state law. Therefore, none of the authority Osuna relies on can save his claim and the case should be dismissed with prejudice.

## III. Alternatively, Officer Hernandez Is Entitled to Qualified Immunity.

If the Court concludes that the social media post constitutes state action, Officer Hernandez is entitled to qualified immunity from any damages claim because it was not clearly established in March 2025 that a comment on a personal YouTube account, made without any actual authority to speak on CDCR's behalf, violated an inmate's right to informational privacy.

The Court may resolve qualified immunity on the second prong alone, which asks whether any violation would have been clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The question is whether precedent in March 2025 placed the unlawfulness of this conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That requires "controlling authority" or "a robust consensus of cases of persuasive authority" that "clearly prohibit[s] the officer's conduct in the particular circumstances before him." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted).

Osuna identifies no such authority. (*See generally* Dkt. No. 28.) By his own account, *A.C. ex rel. Park v. Cortez*, 34 F.4th 783 (9th Cir. 2022), which found no violation, is cited for "its balancing framework, not an immunity denial." (Dkt. No. 28 at 5:5–7, 6:4–8.) *Powell v. Schriver*, 175 F.3d 107, 111-12, 114 (2d Cir. 1999), a Second Circuit decision, "granted privacy-claim immunity," and *Anderson v. Blake*, 469 F.3d 910, 914-18 (10th Cir. 2006), a Tenth Circuit decision, does not address "the state-action issue disputed here." (*Id.*) The Ninth Circuit cases cited do not fill the gap. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1264–65, 1269 (9th Cir. 1998), involved an employer's undisclosed medical testing of its employees.

*Seaton v. Mayberg*, 610 F.3d 530, 534, 537, 539 (9th Cir. 2010), rejected the plaintiff's privacy claim, held that prisoners have no constitutionally protected expectation of privacy in treatment records "when the state has a legitimate penological interest in access to them," and observed that the Supreme Court has never held that the Constitution protects the privacy of medical records. And *McDade* decided only the issue of state action because it assumed, without deciding, that the disclosure violated a privacy right. *McDade*, 223 F.3d at 1141.

Reading these cases together does not supply the missing holding. (Dkt. No. 28 at 5:24–6:1.) No decision, alone or in combination, told a reasonable officer in 2025 that a comment from a personal account about an inmate's medication and monitoring was both attributable to the State and a violation of the Fourteenth Amendment. The complaint adds another layer of uncertainty, because Osuna declines to allege whether the statements were accurate. (Dkt. No. 1 ¶¶ 7–8; Dkt. No. 28 at 5:15–17.) The Ninth Circuit granted immunity in a more analogous disclosure case, *Marsh v. County of San Diego*, 680 F.3d 1148 (9th Cir. 2012), where a prosecutor copied a child's autopsy photograph and later gave it to the press. The court recognized a privacy interest but held that it "can't fault a state actor for failing to anticipate our ruling." *Id.* at 1158–59. It also held that the later release to the press, after the prosecutor retired, was not state action at all. *Id.* at 1158.

Nor is this the rare obvious case Osuna refers to. (Dkt. No. 28 at 6.) *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002), relied on binding circuit precedent together with a state regulation and a Department of Justice report, and *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam), involved conditions so extreme that "no reasonable correctional officer could have concluded" they were lawful. Here there is no binding precedent, and whether the Constitution applies to the comment at all is, at a minimum, open to debate. CDCR's policies do not change the analysis. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

Finally, the screening order does not resolve these questions. It found the allegations sufficient "for the purpose of screening" and did not address color of state law or qualified

immunity. (Dkt. No. 10 at 7.) Screening "is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007). Therefore, qualified immunity should be granted in the alternative and the complaint dismissed with prejudice.

## IV. LEAVE TO AMEND SHOULD BE DENIED, AND OSUNA'S REMAINING REQUESTS DO NOT AFFECT THE MOTION.

Osuna elected to stand on his complaint. (Dkt. No. 9; Dkt. No. 10 at 2, 4.) He now says an amendment would address Hernandez's "employment status when the relevant acts occurred, the assignment and source of access, and the connection between that access and the disclosure." (Dkt. No. 28 at 9:3–6.) More details about access would not cure the defect. The complaint's exhibits already establish what the comment said, where it was posted, and from what account, and Osuna's new exhibits show that authority to speak for CDCR rests with designated staff. (Dkt. No. 1 at 17–19; Dkt. No. 28 at 11, 16.) Thus, no amendment could plausibly allege that the author of this comment possessed, and purported to exercise, authority to speak for the State, making amendment futile. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). And whether the law was clearly established does not depend on the pleadings.

Osuna's remaining requests need no ruling. The motion relies only on the complaint and its exhibits, and it assumes the truth of the allegations, including authorship, solely for purposes of Rule 12(b)(6). (Dkt. No. 23 at 6:20–21.) No conversion under Rule 12(d) is called for. This reply raises no new ground or evidence, so no further briefing is warranted. *See* L.R. 230(m). No state claim is pleaded (Dkt. No. 28 at 9:17), so there is nothing for the Court to reserve. A dismissal would decide only the federal claim. And Defendant's position is limited to the federal question presented of whether the complaint alleges action under color of state law within the meaning of Section 1983. Therefore, amendment would be futile, and the complaint should be dismissed with prejudice.

///

///

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion and dismiss the complaint with prejudice.

Dated: November 23, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
SHARON A. GARSKE
Supervising Deputy Attorney General

***/s/ Rebecca Brandel***
REBECCA BRANDEL
Deputy Attorney General
*Attorneys for Defendant G. Hernandez*

SA2026401672
4550307145503071

## CERTIFICATE OF SERVICE

Case Name: **Osuna, Jaime (BD0868) v. G. Hernandez, et al.** No. **1:26-cv-01144-KES-EPG**

I hereby certify that on November 23, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On November 23, 2026, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Jamie Osuna
CDCR #: BD0868
California State Prison - Corcoran
P.O. Box 3476
Corcoran, CA 93212
***In Pro Per***

Jamie Osuna
CDCR #: BD0868
California State Prison - Corcoran
P.O. Box 8800
Corcoran, CA 93212
***In Pro Per***

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on November 23, 2026, at Sacramento, California.

| L. Langlois | ***/s/ L. Langlois*** |
|---|---|
| Declarant | Signature |

SA2026401672
45504781